Good morning everyone. Please be seated. Welcome to the Ninth Circuit. We are delighted to be with you here this morning. And we will, I think we have a total of five cases on calendar. We'll hear the cases in the order they appear and we will start with Chi v. Lynch. So council, if you're ready to proceed, please do. Good morning, honors. May the police, court, my name is Chi Hsien-Yee and I represent the petitioner. In this case the BIA found that the petitioner did not suffer past persecution, nor did he has a well-founded fear of future persecution. In finding that the petitioner did not suffer past persecution, the BIA relied primarily upon the Guo case. I think there are two major differences between these cases and the Guo case ignored by the BIA in finding no past persecution. Number one, in the Guo case the court was not compelled to find a past persecution because Guo was not, did not show that he was disallowed to attend household or church activities after he was released from the government's custody. But I thought the petitioner in Guo also was forced to report to the government just like your client. Exactly, your honor, but in this case the petitioner was required to report back to the authority. The very purpose of requiring him to report is to make sure that he did not attend any house church activities. That fact is the same in Guo as in your case. I thought that's what I'm, that's my point, is that your client is certainly no worse off than the petitioner in Guo was on that front. Exactly, your honor. If we just look at his arrest and the detention and what happened to him during the detention, I think my client, my client, the harm my client was less severe, yes. But that's not the end of the inquiry. We have to look at the big picture and as to what happened after his release. And in Guo there was only one encounter with the authorities, but in this case after his release the petitioner continued to attend house church meetings and on December 24th 2003 and the government went over to conduct another raid and he managed to run away. Why would they, why were they raiding the house churches? Because, I guess, because they're not registered. Now your client can go to church. He's a baptized Lutheran so he's a Protestant and the Protestant faith is one of the five recognized churches by China and he can go there and attend openly so far as the record shows, but he chose to go to a house church which is in violation of the Chinese law because it's not registered. The people don't register them so they, it's a violation of the law. Now he is, how does he, how is he prevented from exercising his religion as a Lutheran when Lutheran is a Protestant church and the Protestant church is recognized and he can go there to worship? That he chooses to go to a house church which is illegal, how does that change and make him taking away his violation of his religious rights? If you look at the country report, the reason why people choose not to register is because they don't want to put themselves under the watch eye of the government. The government emphasizes the leadership of the party, the communism, over the God. So I think the very fact that the traditioner was forced to go underground is a form of persecution. But he wasn't forced to go underground to openly. It's a recognized church in China. But there's a different God. There's a different God. Yeah, because that's the God from the perspective of the Communist Party. He is a Protestant, isn't he? Yes, Your Honor. And they can, Protestants can worship in Protestant churches and I guess that's the Protestant God that they worship. But they should be, as a religious believer, they should be allowed to meet freely to discuss the Bible. And if we look at the evidence in the case, they just gathered for Bible study to sing hymns. And that's a free exercise of their religious rights. I'm not saying that it's a bad idea. I don't know. I think they ought to let anybody worship, wherever they have to go to a Protestant church to worship. But he can worship. He can worship in a Protestant church. So is it your position that even though he can worship in his Protestant faith, open and freely, he has a right to worship in a house that's unregistered and is going to be controlled by the Communist Party and the authorities. And that fits within what we've said is a freedom of religion that must be protected. Exactly, Your Honor. That's your position. Yes, Your Honor. I think the other major difference between the Gu case and this case is that in Gu, Gu appears to be the only person in the family who has a problem with the authorities. But in this case, petitioner's parents were arrested not once, not twice, but five times altogether for their religious belief. I read the BIA's decision, word by word, over and over again. I did not find any reference to petitioner's parents' multiple arrests. I think the BIA's complete failure to include what happened to his parents in assessing whether or not there's a past persecution or there's a future, well-founded fear of future persecution, that by itself constitutes a reversible error. Well, wait. I mean, I think you tried to collapse two things there. His parents and his sister are relevant for, with respect to whether he has a well-founded fear of future persecution. They're not relevant with respect to whether he suffered past persecution, are they? Well, that's not what the court said in the past. Actually, the BIA cited to Lee versus INS in its decision. I just happen to have a copy of the Lee versus INS. In that decision, the court observes that one incident of an arrest of a family member at a church may provide the basis for past persecution of petitioner's family on account of religion. So, the BIA's complete failure to include what happened to his family members is a reversible error on the part of the BIA. Go ahead. Is it true that his father and mother are still meeting in family in-house churches? Yes, Your Honor. But they were arrested five times altogether. What I think your burden is, though, nobody is disputing anything anybody alleged. The question is whether what he alleged rises to the level of persecution. And they said no. And how do we say they're wrong? What is there that we're missing? Okay. When they said no, they did not consider the parents. What happened to the parents? The parents filed multiple arrests. When the BIA considered whether or not there's a past persecution or, as Judge Watford correctly pointed out, when the BIA considered whether or not there's a future, well-founded fear of future persecution, the BIA just simply ignored what happened to the parents. I think that's what I guess I was getting stuck on. I don't think that's right. If anything, the record we have before us suggests that nothing happened to the parents. They're still there. They presumably continue to worship, right? I know the mother might not be a preacher anymore, but they continue to worship. And apparently, from the record we have, nothing has happened to them. You mean nothing has happened to him after? Yeah, after he left. He left. Which is a lot of years now. Yeah, but when we make an assessment of whether or not there's a future persecution, we look at what happened over time. And the parents were arrested five times. But for future, I can't remember. Your client left China, what was it, in 2003? Okay. So let's say that a bunch of bad things happened 2001 to 2003, but from 2003 to 2009, nothing happened. Basically, whatever past persecution occurred, the government has sort of thrown in the towel and is no longer doing any bad things. That undercuts completely. The petitioners claim that there's a well-founded fear of future persecution, right? Yes, but then in that case, the general country condition information will come into play. Right, and the State Department reports say that it varies quite a bit by locality as to how – go ahead, what were you going to say? Yeah, but I think that the standard of proof is very low. It's not that demanding. It's only one in 10 chance. If we look at what happened to him before, what happened to his family before, in light of the general country condition in record, I think the court is compelled to make a finding at least there's one in 10 chance that he will suffer past persecution. And also, if we look at the BIS decision in its entirety, there's no mentioning whatsoever as to the country report information in a record to rebut the petitioners' well-founded fear of future persecution. I think that is also – the BIS failure to consider the country report's information is also a reversible error. Okay. Yeah, you're out of time, but we'll give you a minute. Thank you, Your Honor. Let's hear from the government. May it please the Court. Your Honor, my name is John McAdams, and I represent the Attorney General, the respondent in the case. The petitioner did not establish past persecution or a well-founded fear. Substantial evidence – Can you be sure to speak into the microphone? Substantial evidence does not compel the court to find that a different decision is compelled. The court's precedent supports the finding of no past persecution. The petitioner encountered an isolated encounter, and in his statement and testimony acknowledged that the police had him report because it was an illegal gathering, and he was not precluded from practicing his religion. Well, how do you respond to counsel's point – let's focus on past persecution here – that the BIA failed to take into account the pattern of arrests and detention that the government perpetrated against his parents? As the judge mentioned earlier, the record that the court has has information about arrests affecting the mother and or the father, but they weren't developed. It wasn't a development of facts to show that they were because of a religion, or was it, as he, Mr. Chee, talks about, because of an illegal gathering? So, when one looks at – he was in an unregistered church and, as he said, he was required to report because of the illegal gathering. We don't have the ability to look at what happened to the mother and father back then, so there's no evidence that compels the court to find that he did establish the past persecution. In looking at the well-founded fear factor, the board addressed that the mother and father still live in the same home. They still practice their religion in the house church. The sister is there and has had no difficulties with her practice of religion. There was other evidence looked at, and in the entire record we look at that the petitioner's mother retired from preaching at one point because she had an illness, had a brain tumor, and appears that she received treatment and is not preaching, and it may be because of that, but that wasn't developed at the hearing. So, the record here does not compel the court to conclude otherwise. He, Mr. Chee, suffered less than other individuals that this court has found where there is no past persecution. The cases of Gu and Xi, X-I-E, Cao, C-A-O, and Wu, which were submitted by the respondent in the 28-J letter. And again, the testimony in the record, in his statement and in his direct testimony, was that he was reporting because of his illegal gathering, and that he was able to practice his religion. He just could not go or just did not go to the unregistered house church. And thus, the evidence is not so overwhelming a treatment that would require the court to be compelled to conclude that Mr. Chee suffered past persecution. Is the only thing that he alleged as far as past difficulty the 24 hours he is in jail without food? Yes, Your Honor, he was less than 24 hours. There was no injury. He had to report. And is your position that that isn't sufficient, I suppose, under Persaud? Yes, Your Honor, under Persaud and other precedent by the court. In addition, the evidence shows that he was able to get his passport before he left China and leave China without difficulty. If there are no further questions by the court, the respondent would ask the court to look at the evidence and conclude that substantial evidence supports the decision and that the court is not compelled to conclude otherwise, and the petition should be denied. Okay. Thank you, counsel. We appreciate your arguments. Why don't we give a minute in rebuttal to counsel for the petitioner? First of all, Your Honor, I just want to point out that just now the counsel for the government was saying that there was no indication that the parents were arrested for religious beliefs. And if you look at the record, especially for their last arrest, the timing of the arrest says a lot about whether or not it's for religious purpose. And petitioner's parents were arrested on December 24th. Yeah, I don't think he can dispute the religious connection there because I think it was a raid right on the house church. But what about the prior arrest? The prior arrest, if we look at the petitioner's statement, written statement attached to his assignment application, it talked about that their meetings and their gatherings were characterized by the government as illegal and anti-government. And for that reason, our activities were usually carried out in private homes. And then my parents had been arrested five times. Every time they had to pose a bond for their release. And so if we look at that. Doesn't that passage you just read support your opponent's point? It doesn't say anything about the arrest being for religious reasons. I'm just saying what you just read. Yes, sir. If you look at it in the context, the reason why they were arrested is because they met underground. They had underground meetings of religious meetings, which was characterized by the government as illegal. And another thing I want to point out is that even though the respondent came out with a passport, but the record indicates that he was smuggled out on page 106. And the respondent clearly testified that Mr. Chen helped him being smuggled out of the country. So, therefore, even his ability to travel with a passport does not reduce the likelihood that he would face future persecution. Thank you, Your Honor. Thank you, Counsel. The case just argued will stand submitted.
judges: Wallace, Farris, Watford